# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
### AT CHATTANOOGA

REBECCA RICHARDSON,

      Plaintiff,

v.

ASTEC, INC.,

      Defendant.

Case No.: 1:18-cv-00020-TRM-SKL

---

## ASTEC, INC.'S MEMORANDUM IN SUPPORT OF ITS
## MOTION FOR SUMMARY JUDGMENT

---

Astec, Inc., through counsel and pursuant to Fed. R. Civ. P. 56, moves this Court for an order entering summary judgment in its favor on all of Rebecca Richardson's claims. In this case, Richardson has asserted a misclassification claim against Astec under the Federal Labor Standards Act, and a claim under the Age Discrimination in Employment Act alleging that Astec unlawfully terminated her employment because of her age. But the undisputed facts demonstrate that her claims fail for several reasons:

- FLSA Misclassification: Richardson was an exempt employee under the executive exemption, or alternatively, administrative exemption. Her duties were managerial in nature; she supervised at least two people; she had the ability to fire or hire employees; and she exercised discretion and independent judgment in the execution of her job duties. As a result, Richardson was properly classified as exempt and her FLSA claim must fail.

- ADEA Discrimination: Richardson was fired due to her repeated violation of Astec's Core Values, in particular respect for others. Astec replaced her with an employee 5 years her junior, who is in the same protected class, and it did not treat Richardson any differently than it did its other employees. Richardson thus cannot make out a case for age discrimination.

14801_00/1701/CWG-3556077_5

## FACTS

Richardson began working for Astec in 1980.[1]  She worked her way up through the Accounting Department over the course of the next 35 years, serving in various positions.[2]  As is pertinent to this litigation, Richardson served as Astec's Accounting Manager from before the company went public until July 2016.[3]  In July 2016, Astec restructured the Accounting Department, and Richardson was placed in the role of Accounts Payable Manager.[4]  She was employed in this role until her termination on January 16, 2017.[5]

### A.  Job duties while at Astec.

Richardson began working as Astec's Accounting Manager in 1997.[6]  During that time she had numerous job duties, including:

- Supervising the payroll accounts payable clerks, and a temporary employee.[7]

- Responsible for payroll, and oversight of others performing payroll duties.[8]

- Approval of Diner's Club applications.[9]

- Work on 401k reports that were submitted to J.P. Morgan, and to communicate with and answer any questions that JP Morgan may have.[10]

- Guiding payroll clerks as needed with the execution of their duties.[11]

- Coordinating with company auditors regarding matters within her responsibility.[12]

---

[1] Richardson Dep. 26:13-14.  (Joint Appendix p. 15).  The Joint Appendix will be referred to herein with the abbreviation of "J.A."
[2] Richardson Dep. 26-29.  (J.A. pp. 15-18).
[3] Richardson Dep. 27:14-25.  (J.A. p. 16).
[4] Richardson Dep. 44:6-10.  (J.A. p. 25).
[5] McMahan Ex. 14.  (J.A. p. 148).
[6] Richardson Dep. 27:14-25.  (J.A. p. 16).
[7] Richardson Dep. 30:1-25.  (J.A. p. 19).
[8] Richardson Dep. 27:7-25.  (J.A. p. 16).
[9] Richardson Dep. Ex. 13 (J.A. p. 107); McMahan Dep. 37:14-19 (J.A. p. 121).
[10] Richardson at 48:18-25; 49:1-13.  (J.A. pp. 26-27).
[11] Richardson Dep. 50:11-15.  (J.A. p. 28).
[12] Richardson Dep. 50:16-19.  (J.A. p. 28).

She performed all of these duties (and others) until she was informed on June 13, 2016, that Astec was restructuring its Accounting Department.[13] The restructuring shifted payroll duties from Richardson to Jo Henderson, under the supervision of Joe Oswald, and ultimately placed Richardson in the role of Accounts Payable Manager.[14]

## B. Allegations of age discrimination.

Richardson asserts that in the last three years of her employment, her supervisor, Lori McMahan asked questions about her retirement plans.[15] She claims that this occurred only 10 or 15 times during that three-year period.[16] She also alleges that her coworker, Joe Oswald, made similar inquiries.[17] But as was clearly explained, these comments were made for purposes of succession planning.[18] As is common, Astec wanted to ensure that there was a backup in the event that an employee was out, resigned, retired, or otherwise was no longer employed with Astec.[19] And Richardson at that time had been performing her job for many years and had no designated successor.[20] It thus was imperative that Ms. McMahan (Richardson's direct supervisor) know her long-term plans so that she (and Astec) could plan for the future of the department, particularly in light of Richardson's extensive institutional knowledge regarding the department.[21]

---

[13] Locklear Dep. 109:12-19. (J.A. p. 161).

[14] McMahan Dep. 97:2-15 (J.A. p. 134); Richardson Ex. 6 (J.A. p. 96).

[15] Richardson Dep. 91:18-25; 92:1-5. (J.A. pp. 40-41).

[16] Richardson Dep. 92:1-8. (J.A. p. 41).

[17] Richardson Dep. 102:17-20. (J.A. p. 44).

[18] McMahan Dep. 65:4-17. (J.A. p. 130).

[19] McMahan Dep. 65:4-17. (J.A. p. 130).

[20] McMahan Dep. 64:12-25 – 65:1-11 (J.A. p. 129-130); 66:17-25 (J.A. p. 131); 67:1-21 (J.A. p. 132).

[21] McMahan Dep. 65:4-17. (J.A. p. 130).

14801_00/1701/CWG-3556077_5

## C. Richardson's violations of Astec's Core Values

Astec's Core Values require employees to respect one another, and those that they deal with outside of the company.[22] And Richardson repeatedly violated these Core Values during the course of her lengthy employment.[23] For example, when Donna Locklear first began working with Astec, Richardson greeted her by demeaning her and stating out loud, so that others could hear, that Ms. Locklear would not "be here long," and that "HR directors are a dime a dozen."[24] In addition, HR Manager Dawn Poe reported likewise improper altercations between Jo Henderson and Richardson, including, in May 2016 when Richardson accused Ms. Henderson of making inappropriate changes to the payroll records.[25] Ms. Henderson had been making changes to addresses so that they would pass the ADP system, but Richardson deemed these changes to be "ridiculous."[26] Richardson further went on to state that human resources does not have enough to do, and that she did not have time to deal with such matters. And, lastly, when Ms. Henderson attempted to explain to Richardson how the ADP system worked and why she needed to make the changes, Richardson snapped back in an elevated voice that they can "put whatever they want to for the name."[27] After these events occurred in 2015, Malcom Swanson, then-President of Astec, characterized Richardson's statement that Ms. Locklear "won't be here

---

[22] Richardson Dep. Ex. 7, page 3. (J.A. p. 99).

[23] Notably, Richardson has not produced any witnesses to contradict this fact.

[24] Locklear Dep. 102:1-7. (J.A. p. 160).

[25] McMahan Dep. Ex. 11. (J.A. p. 147).

[26] McMahan Dep. Ex. 11. (J.A. p. 147).

[27] McMahan Dep. Ex. 11. (J.A. p. 147).

long" as a malicious comment.[28]  To be sure, Mr. Swanson issued a hand written warning to Richardson on her 2015 evaluation to be mindful of observing Astec's Core Values.[29]

Richardson did not heed Mr. Swanson's words, and she continued treating people in an inappropriate manner.  In July 2016, Richardson received a Final Written Warning as a result of her behavior, including that she acts in a rude degrading manner, blaming people for mistakes that have nothing to do with them, treating employees like dogs, and having a general demeanor that led one individual to state "Boy, your payroll person, Becky, is quite something to work with isn't she?".[30]  Richardson's lack of appropriate communication and conduct toward others also was documented on her 2016 evaluation.[31]

But despite receiving the Final Written Warning for her behavior, it continued.  On January 16, 2017, Joe Oswald submitted a complaint following an interaction with her.[32]  In the complaint, Mr. Oswald stated that because of an alleged payroll error, Richardson belittled him in front of the office by loudly stating that "I guess 30 year olds don't make mistakes."[33]  Mr. Oswald also referenced a complaint by employee Ronnie Bowman, which he attached to his complaint.[34]  Ronnie Bowman stated that Richardson came into his office, interrupted a conversation that he was having with another employee, and slammed papers on his desk while the other employee was in his office.[35]  To be sure, this was not an isolated incident, as Mr. Bowman stated that this was at least the fourth such incident.[36]  After receiving these complaints,

---

[28] Richardson Dep. Ex. 16.  (J.A. p. 113).

[29] McMahan Dep. 55:20-25-56:1-5 (J.A. pp. 127-128); McMahan Ex. 5 (J.A. pp. 143-146).

[30] Richardson Dep. Ex. 7.  (J.A. pp. 97-99).

[31] Richardson Dep. Ex. 8.  (J.A. pp. 100-103).

[32] Richardson Dep. Ex. 10.  (J.A. pp. 104-105).

[33] Richardson Dep. Ex. 10.  (J.A. pp. 104-105).

[34] Richardson Dep. Ex. 10.  (J.A. pp. 104-105).

[35] Richardson Dep. Ex. 10.  (J.A. pp. 104-105).

[36] Richardson Dep. Ex. 10.  (J.A. pp. 104-105).

Ms. McMahan determined that Richardson's behavior had violated the Final Written Warning. She therefore decided to terminate Richardson's employment, which occurred on January 16, 2017.[37]

It thus was Richardson's improper behavior—not her age—that caused Astec to terminate her employment.

## ARGUMENT

### II.     Summary judgment standard.

Summary judgment is appropriate when there exists no genuine issues as to any material fact.[38] The movant bears the burden of establishing that no genuine issues of material fact exist, and it may do so by "demonstrating that the nonmoving party lacks evidence to support an essential element of its case on which it would bear the burden of proof at trial."[39] Because only disputed material facts will preclude summary judgment,[40] the nonmoving party must demonstrate, by "significant probative evidence," that "there is [more than] some metaphysical doubt as to the material facts."[41] And though all facts and inferences must be viewed in the light most favorable to the nonmoving party,[42] "the mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."[43]

---

[37] McMahan Dep. Ex. 14. (J.A. p. 148).

[38] Fed. R. Civ. P. 56(a). See Longaberger Co. v. Kolt, 586 F.3d 459, 465 (6th Cir. 2009).

[39] See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Walton v. Ford Motor Co., 424 F.3d 481, 485 (6th Cir. 2005).

[40] Daugherty v. Sajar Plastics, Inc., 544 F.3d 696, 702 (6th Cir. 2008) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

[41] Moore v. Philip Morris Cos., Inc., 8 F.3d 335, 340 (6th Cir. 1993).

[42] Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Eastman Kodak Co. v. Image Technical Servs., Inc., 504 U.S. 451 (1992).

[43] Anderson, 477 U.S. at 252; Dominguez v. Corr. Med. Servs., 555 F.3d 543, 549 (6th Cir. 2009).

## III. FLSA

The Fair Labor Standards Act generally requires employers to pay overtime when an employee works more than 40 hours in a workweek.[44] But if an employee satisfies certain criteria, she is considered exempt from the FLSA's overtime requirement.[45] In particular, overtime is not available to "any employee employed in a bona fide executive, administrative, or professional capacity."[46] Whether an employee qualifies as exempt is primarily a question of fact.[47] And while the employer bears the burden of establishing that employee satisfies the criteria of the exemption, these exemptions are not narrowly construed against employers.[48] Rather, "exemptions are as much a part of the FLSA's purpose as the overtime-pay requirement."[49] It is additionally true that an "employer bears the burden of establishing the affirmative defense by a preponderance of the evidence, [and that it can satisfy] this burden only by providing 'clear and affirmative evidence that the employee meets every requirement of an exemption.'"[50] But this standard does not alter the standard evidentiary burden of summary judgment, which remains unchanged.[51]

Richardson was an exempt employee during all times material to this litigation—when she was employed as Astec's Accounting Manager and when she was later transferred to

---

[44] Misewicz v. City of Memphis, Tenn., 771 F.3d 332, 333-34 (6th Cir. 2014) (citing 29 U.S.C. § 207(a)(1)).

[45] Little v. Belle Tire Distribs., Inc., 588 F. App'x 424, 425 (6th Cir. 2014) (per curiam) (citing 29 U.S.C. § 213).

[46] 29 U.S.C. § 213(a)(1).

[47] Schaefer v. Ind. Mich. Power Co., 358 F.3d 394, 407 (6th Cir. 2004) (Suhrheinrich, J., concurring) (citing Ale v. Tenn. Valley Auth., 269 F.3d 680, 688-89, 691 (6th Cir. 2001); Lott v. Howard Wilson Chrysler—Plymouth, Inc., 203 F.3d 326, 330 (5th Cir. 2000)).

[48] Encino Motorcars, LLC v. Navarro, 138 S. Ct. 1134, 1142 (2018).

[49] Id.

[50] Orton v. Johnny's Lunch Franchise, LLC, 668 F.3d 843, 847 (6th Cir. 2012) (quoting Thomas v. Speedway SuperAmerica, 506 F.3d 496, 501 (6th Cir. 2007)).

[51] Thomas, 506 F.3d at 502.

Accounts Payable Manager. This is because, as explained in Sections A and B, under both roles her job duties qualified her for the executive and administrative exemptions. Richardson's claims under the FLSA therefore should be dismissed.

### A. Richardson's job duties meet the FLSA executive exemption.

The FLSA executive exemption applies when an employee is one:

(1) [Who is] [c]compensated on a salary basis at a rate of not less than $ 455 per week . . . ;

(2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;

(3) Who customarily and regularly directs the work of two or more other employees; and

(4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.[52]

The employer bears the burden of establishing that each of these elements exist in order to show that the exemption applies.[53]

There is no dispute that Richardson was a salaried individual earning enough to satisfy the first prong of the executive exemption. And, as explained below, the undisputed facts show that Richardson also met the remaining requirements and thus was exempt from the FLSA's overtime requirements.

### 1. Richardson's primary job duty at Astec was management.

The second requirement of the executive exemption is that the employee's primary duty must be management.[54] For purposes of this requirement, management includes, among other

---

[52] 29 CFR § 541.100(a)(1)-(4).
[53] Roberts v. Corr. Corp. of Am., 2015 U.S. Dist. LEXIS 82575, *16-17, fn. 8 (M.D. Tenn. June 25, 2015) (citing Renfro v. Ind. Mich. Power Co., 370 F.3d 512, 515 (6th Cir. 2004) and Brennan v. S. Prods. Inc., 513 F.2d 740 (6th Cir. 1975)).
[54] 29 CFR § 541.100(a)(2).

things:

> interviewing, selecting, and training employees; setting and adjusting their rates
> of pay and hours of work; directing the work of employees; . . . appraising
> employees' productivity and efficiency for the purpose of recommending
> promotions or other changes in status; handling employee complaints and
> grievances; disciplining employees; planning the work; determining the
> techniques to be used; apportioning the work among employees . . . .[55]

Here, as both Accounting Manager and Accounts Payable Manager, Richardson's primary duty

was management. She had multiple direct reports.[56] She had the ability to discipline her direct

reports,[57] and could delegate tasks to them as she saw fit.[58] She routinely interviewed new

employees, along with Ms. McMahan and Mr. Oswald.[59] Richardson likewise conducted

performance reviews for her direct reports, and she made recommendations as to their salary

increases.[60] And Richardson's direct reports also submitted their requests for time off to her.[61]

As is clear, one of her primary duties at Astec was management of her department.

> As such, Richardson has satisfied the second element of the executive exemption.

> ### 2. *Richardson customarily directed the work of two or more employees.*

The third requirement to meet the executive exemption is that the employee must

"customarily and regularly direct the work of two or more employees."[62] In Richardson's

capacity as the Accounting Manager, she readily concedes that she had more than two direct

reports.[63] And even after the restructuring of the department occurred in June 2016 and

---

[55] 29 CFR § 541.102

[56] See Section A.2.

[57] See McMahan Dep. 147:18-19. (J.A. p. 141).

[58] Richardson Dep. 33:9-13. (J.A. p. 22).

[59] Richardson Dep. 142:13-17. (J.A. p. 53).

[60] Richardson Dep. Ex. 15 (J.A. pp. 110-112); Richardson Dep. 14-20 (J.A. pp. 8-14).

[61] Richardson at 142:23-25; 143:1-4. (J.A. pp. 53-54).

[62] 29 CFR § 541.104.

[63] Richardson Dep. 29-31. (J.A. pp. 18-20).

Richardson began working as the Accounts Payable Manager, she still directed work of two or more employees—Ann Daniel and Maureen Grisham.[64]

Richardson predictably now contends that she actually did not supervise Maureen Grisham.[65] But her self-serving testimony is belied by her own documents.[66] To be sure, Richardson's supervision of these two individuals is confirmed by the deposition testimony of Ms. McMahan (Controller), Mr. Oswald (Assistant Controller), Ms. Locklear (Human Resources Director), and documentary evidence.[67] For example, in one email in November, 2016, Lori McMahan asked Richardson and other members of management to "forward this email [regarding acting appropriately in the work place] to [their] direct report."[68] And further stated that "[a]s part of management, we should not be participating in any [such] behavior."[69] In response, Richardson forwarded Ms. McMahan's email to **both** Ann Daniel and Maureen Grisham—each her direct reports.[70] In another instance, Richardson was asked to provide suggested salary increases for her direct reports.[71] Richardson responded to this request by suggesting raises for both Ann Daniel and Maureen Grisham.[72]

It therefore is readily apparent that Richardson customarily directed the work of at least two other individuals. As such, Richardson's job duties meet the third element of the executive exemption.

---

[64] McMahan Dep. 143:4-17 (J.A. p. 140); Oswald Dep. 148:4-7 (J.A. p. 176); Locklear 109:14-19 (J.A. p. 161); Richardson Dep. Ex. 3 (J.A. p. 95); Richardson Dep. Ex. 14 (J.A. pp. 108-109).

[65] Richardson Dep. 52:5-14 9 (J.A. p. 29); 54:12-23 (J.A. p. 31).

[66] Richardson Dep. Ex. 14 (J.A. pp. 108-109); Richardson Dep. Ex. 15 (J.A. pp. 110-112).

[67] McMahan Dep. 143:4-17 (J.A. p. 140); Oswald Dep. 148:4-7 (J.A. p. 176); Locklear 109:14-19 (J.A. p. 161); Richardson Dep. Ex. 3 (J.A. p. 95); Richardson Dep. Ex. 14 (J.A. pp. 108-109).

[68] Richardson Dep. Ex. 14. (J.A. pp. 108-109).

[69] Richardson Dep. Ex. 14. (J.A. pp. 108-109).

[70] Richardson Dep. Ex. 14. (J.A. pp. 108-109).

[71] Richardson Dep. Ex. 15. (J.A. pp. 110-112).

[72] Richardson Dep. Ex. 15. (J.A. pp. 110-112).

### 3. Richardson had the authority to discipline, hire and fire, or her suggestions as to such matters were given particular weight.

The final requirement is that the employee have the **ability** to hire and fire, or that her opinions as to hiring, firing, or promotions are given particular weight.[73] When determining whether an employee's opinions are given "particular weight," an employee's suggestions may still be deemed to carry "'particular weight' even if a higher level manager's recommendation has more importance [or] even if the employee does not have authority to make the ultimate decision as to the employee's change in status."[74]

During her time as both the Accounting Manager and Accounts Payable Manager, Richardson had the authority to hire or fire employees.[75] Though she feigns disbelief as to this authority, her own subjective belief on this point is not enough.[76] To be sure, the testimony of Ms. McMahan demonstrated that Richardson did in fact have the authority to hire or fire.[77] Ms. McMahan went so far as to state that Richardson **should have fired** Debbie Daugherty, but that Richardson decided not do so—and this was during Richardson's time as Accounts Payable Manager.[78] Emails further demonstrate that Richardson took part in the interview process for her

---

[73] 29 CFR § 541.100(a)(4).

[74] 29 CFR § 541.105.

[75] McMahan Dep. 24 (J.A. p. 120); 41-42 (J.A. pp. 122-123).

[76] See e.g., Byrd v. Stone, No. 97-1841, 2000 U.S. App. LEXIS 441 *12 (6th Cir. 2000) (holding "subjective skepticism of the truth of [the employer's] representation does not raise a triable issue as to pretext.); Walls v. Johnson, 229 F. Supp. 3d 678, 691 (E.D. Tenn. Jan. 15, 2017) (McDonough, J.) (stating that a plaintiff's subjective belief is insufficient to create a genuine issue of material fact as to whether retaliation for engaging in protected activity were the actual reason for his termination.); Manire v. Am. Equity Mortg., Inc., 2005 U.S. Dist. LEXIS 48213, *10 (E.D. Mich. Sept. 6, 2005) ("A plaintiff's subjective belief does not create an issue of fact."); Guiyang Bearing Factory v. Guidon, Inc., 1997 U.S. Dist. LEXIS 21384, *10 (W.D. Mich. Dec. 15, 1997) ("Thus, although evidence of plaintiffs' subjective belief may be considered, it is not considered in a vacuum and cannot, standing alone, suffice to create a genuine issue of material fact.").

[77] McMahan Dep. 41:3-10.  (J.A. p. 122).

[78] McMahan Dep. 41:11-25; 42:1-14.  (J.A. pp. 122-123).

14801_00/1701/CWG-3556077_5

department—naturally because her opinions bore particular weight on who was hired.[79] The fact that Richardson never fired or hired anyone is immaterial.[80] What matters is that she had the ability to do so if she so elected.[81]

Richardson's unsupported, conclusory, and self-serving protestations as to her job duties aside, the testimony of her supervisor, combined with the contemporaneous emails and documents, demonstrates that Richardson's job duties during her time as Accounting Manager and Accounts Payable Manager meet the requirements of the executive exemption. Richardson's claim for unpaid overtime thus should be dismissed.

## B. In the alternative, Richardson's duties meet the FLSA administrative exemption.

The FLSA administrative exemption applies when an employee is one:

(1) [Who is] [c]ompensated on a salary or fee basis at a rate of not less than $ 455 per week . . . ;[82]

(2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and

(3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.[83]

As with the executive exemption, there is no dispute as to the manner or amount of Richardson's compensation. And it is also undisputed that Richardson's primary duties were the performance of office work in furtherance of Astec's business.[84] The lone remaining

---

[79] See Richardson Ex. 12. (J.A. p. 106).
[80] See e.g., Allen v. Coil Tubing Servs., LLC, 846 F. Supp. 2d 678, 709-10 (Texas S.D. Jan. 11, 2012) (holding that even though an employee never actually fired anyone, the fact that he had the authority to do so is all that mattered).
[81] See e.g., id.
[82] There is no dispute that Richardson was a salaried individual earning a great enough wage to satisfy the first prong of the administrative exemption.
[83] 29 CFR 541.200(a)(1)-(3)
[84] See CFR 29 541.201(a).

14801_00/1701/CWG-3556077_5

requirement is whether she exercised discretion and independent judgment with respect to matters of significance and the undisputed facts demonstrate that she did.

"Discretion and independent judgment," within the context of the administrative exemption, generally requires that an employee engage in "the comparison and evaluation of possible courses of conduct and acting or making a decision after the various possibilities have been considered."[85]  This means that "the person has the authority or power to make an independent choice, free from immediate direction or supervision, and with respect to matters of significance."[86]  During Richardson's time as Accounting Manager and Accounts Payable Manager, her primary job duties included the exercise of discretion and independent judgment.

Joe Oswald testified that Richardson had discretion to determine the ways in which she executed her duties as Accounting Manager.[87]  For example, in reviewing the payroll registry, she elected to perform this task manually rather than rely upon other systems that were available to her.  There was not one set way that she had to perform her payroll duties, nor was there a right or a wrong; she decided how best to perform her duties.[88]  Mr. Oswald further testified that, when performing sales tax functions for Astec, Richardson has discretion to decide when, where, how often, and at what rate such taxes should be paid.[89]  Additionally, Richardson exhibited independent judgment and discretion in multiple aspects of both of her positions.  One such area that demonstrates Richardson's exercise of description is with her approval of Diner's Club

---

[85] Mohorn v. TVA, No. 3:05-CV-518, 2007 U.S. Dist. LEXIS 52014, *13 (E.D. Tenn. July 17, 2007) (quoting 29 C.F.R. § 541.202(a)).

[86] Renfro v. Indiana Michigan Power Co., 370 F.3d 512, 518-19 (6th Cir. 2004) (quoting 29 C.F.R. § 541.202(c)).

[87] Oswald Dep. 10:1-25; 11:1-4.  (J.A. pp. 172-173).

[88] Oswald Dep. 10:1-25; 11:1-4.  (J.A. pp. 172-173).

[89] Oswald Dep. 55:14-19 (J.A. p. 175); Richardson Dep. 57 (J.A. p. 32); Richardson Dep. Ex. 6 (J.A. p. 96).

applications.[90]  Numerous employees sent emails to Richardson requesting that she approve

Diners' Club applications.[91]  Richardson now states that, in her view, she never had the

responsibility to approve Diners' Club applications.[92]  But the documentary evidence clearly

demonstrates otherwise.[93]

Accordingly, in the event that this court does not bar Richardson's FLSA claims due to

the executive exemption, her claims still must fail as a result of the administrative exemption.

## IV.   **Richardson was not terminated because of her age, but because of her repeated violations of Astec's Core Values.**

Astec terminated Richardson for her repeated violations of Astec's Core Values—not

because of her age.  The ADEA prohibits, among other things, an employer from terminating an

employee because of her age.[94]  A plaintiff may establish such a violation by direct or

circumstantial evidence.[95]  Direct evidence is evidence that, if believed, "requires the conclusion

that unlawful discrimination was at least a motivating factor in the employer's actions."[96]

Circumstantial evidence, on the other hand, is evidence that "does not on its face establish

---

[90] Richardson Dep. Ex. 13.  (J.A. p. 107).

[91] Richardson Dep. Ex. 13.  (J.A. p. 107).

[92] Richardson Dep. 63:4-6.  (J.A. p. 33).  See e.g., Byrd v. Stone, No. 97-1841, 2000 U.S. App. LEXIS 441 *12 (6th Cir. Jan. 6, 2000) (holding "subjective skepticism of the truth of [the employer's] representation does not raise a triable issue as to pretext.); Walls v. Johnson, 229 F. Supp. 3d 678, 691 (E.D. Tenn. Jan. 15, 2017) (McDonough, J.) (stating that a plaintiff's subjective belief is insufficient to create a genuine issue of material fact as to whether retaliation for engaging in protected activity were the actual reason for his termination.); Manire v. Am. Equity Mortg., Inc., 2005 U.S. Dist. LEXIS 48213, *10 (E.D. Mich. Sept. 6, 2005) ("A plaintiff's subjective belief does not create an issue of fact."); Guiyang Bearing Factory v. Guidon, Inc., 1997 U.S. Dist. LEXIS 21384, *10 (W.D. Mich. Dec. 15, 1997) ("Thus, although evidence of plaintiffs' subjective belief may be considered, it is not considered in a vacuum and cannot, standing alone, suffice to create a genuine issue of material fact.").

[93] Richardson Dep. Ex. 13.  (J.A. p. 107).

[94] See 29 U.S.C. § 623(a)(1).

[95] Geiger v. Tower Auto, 579 F.3d 614, 620 (6th Cir. 2009).

[96] Id. (quoting Martin v. Toledo Cardiology Consultants, Inc., 548 F.3d 405, 410 (6th Cir. 2008)).

discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred."[97] But regardless of which evidence Richardson relies upon, she bears the burden of persuasion to demonstrate by a preponderance of the evidence "that age was the 'but-for' cause of [Astec's] adverse action."[98]

## A. Richardson's ADEA claim cannot survive on the basis of indirect or circumstantial evidence.

Because Richardson has no direct evidence of discriminatory animus, her only avenue to prove her ADEA claim is by indirect, *i.e.*, circumstantial, evidence. Like most discriminatory causes of action, in order to make out a *prima facie* case for a violation based on indirect evidence, a plaintiff must utilize the McDonnell-Douglas test.[99] For an ADEA claim, a plaintiff must show (1) that she is over 40; (2) that she was qualified for the position; (3) that she suffered an adverse employment action; and (4) that she was replaced by a substantially younger individual.[100]

If the plaintiff satisfies her initial burden and makes out a *prima facie* case, the burden shifts to the employer to produce a "legitimate nondiscriminatory reason for the adverse employment action."[101] Once the employer does so, the plaintiff must then put forth affirmative evidence demonstrating that the employer's proffered reason is pretextual.[102] And if the plaintiff fails to do so, her claim must fail.[103]

---

[97] Id. (quoting Martin, 548 F.3d at 410).

[98] Id. (quoting Gross v. FBL Financial Services, Inc., 557 U.S. 167, 177-78 (2009).

[99] See O'Conner v. Consolidated Coin Caterers Corp., 517 U.S. 308, 312 (1996); Scott v. Goodyear Tire & Rubber Co., 160 F.3d 1121, 1126 (6th Cir. 1998).

[100] Nance v. Goodyear Tire & Rubber Co., 527 F.3d 539, 553 (6th Cir. 2008).

[101] Id.

[102] Id.

[103] See id.

14801_00/1701/CWG-3556077_5

Case 1:18-cv-00020-TRM-SKL   Document 20   Filed 01/14/19   Page 15 of 24   PageID #: 62

### 1. *Richardson has failed to make out a prima facie case of age discrimination.*

#### a. Fran Christenberry is not substantially younger than Richardson.

The first three elements of the <u>McDonnell-Douglas</u> test are not contested. But
Richardson still cannot make out a *prima facie* case because she cannot establish the fourth
element—that she was replaced by someone substantially younger.[104] After Richardson was
terminated, she was replaced by Fran Christenberry who was 65 years old at the time—
Richardson was 70.[105] In the Sixth Circuit, an employee is deemed to have been replaced by a
"substantially younger individual" when the new employee is 6 or more years younger than the
terminated employee.[106] Ms. Christenberry is 5 years younger than Richardson and thus is not
"substantially younger," as is required.

#### b. Richardson cannot show that she was treated differently than a similarly situated employee.

In addition to the fact that Richardson was not replaced by a substantially younger
individual, she likewise cannot show that other "comparable non-protected person [were] treated
better."[107] In order to show disparate treatment, Richardson must show that she was "similarly-
situated in all relevant aspects to the comparable worker."[108] In the context of discriminatory
terminations, "similarly situated means":

> the individuals with whom the plaintiff seeks to compare his/her treatment must
> have dealt with the same supervisor, have been subject to the same standards and
> have engaged in the same conduct without such differentiating or mitigating

---

[104] <u>See e.g.</u>, <u>id.</u>

[105] Complaint at 3-4 para 17 (ECF No. 1, Page ID 3-4); Richardson Dep. 134:22-25; 135:1-3. (J.A. pp. 50-51).

[106] <u>Grosjean v. First Energy Corp.</u>, 349 F.3d 332, 340 (6th Cir. 2003) (holding that establishing an age difference of six years or less is insufficient to establish the fourth element of an ADEA claim). <u>See also</u> <u>Igwe v. Salvation Army</u>, No. 18-CV-10454, 2018 U.S. Dist. LEXIS 215760 *11-12 (E.D. Mich. Dec. 20, 2018) (<u>citing</u> <u>Grosjean</u> for the same).

[107] <u>Mitchell v. Toledo Hosp.</u>, 964 F.2d 577, 582-83 (6th Cir. 1992).

[108] <u>Parries v. Makino, Inc.</u>, 148 Fed. Appx. 291, 296 (6th Cir. 2005).

14801_00/1701/CWG-3556077_5

circumstances that would distinguish their conduct or the employer's treatment of them for it.[109]

And though the misconduct need not be identical, it "must be of comparable seriousness." [110]

Richardson has attempted to show disparate treatment by alleging in that Joe Oswald (an employee in his 30s) was not terminated for engaging in similar behavior.[111] But her only evidence is that she once complained that Mr. Oswald had told her to "hush and get out of [his] office,"[112] and that she believes that he once shouted at Brenda Hixson, another coworker, and that Ms. Hixson complained to Ms. McMahan about the incident. And importantly, Mr. Oswald was not on a Final Written Warning like Richardson was when she engaged in behavior that violated Astec's Core Values.

These two minor instances, when weighed against the litany of evidence of Richardson's repeated violation of Astec's Core Values, as explained above, are not sufficient to establish disparate treatment.[113] As such, Richardson has failed to make out a *prima facie* case of age discrimination.

> 2.    *Even if Richardson has made out a prima facie case, Astec has a legitimate non-discriminatory reason for its termination decision, and Richardson has failed to put forth evidence to establish that the reason is pretextual.*

But even if this court finds that Richardson has made out a *prima facie* case, her claim still must fail because Astec had a legitimate, non-discriminatory reason for terminating Richardson, and she is unable to establish that Astec's reason was merely pretextual.[114]

---

[109] Id. (quoting Mitchell, 964 F.2d at 582-83).

[110] Parries v. Makino, Inc., 148 Fed. Appx. 291, 296 (6th Cir. 2005) (citing See Hollins v. Atl. Co., Inc., 188 F.3d 652, 659 (6th. Cir. 1999)).

[111] Richardson Dep. 139:14-16 (J.A. p. 52); Richardson Dep. Ex. 1, Interrogatory No. 15 (J.A. pp. 69-71).

[112] Richardson Dep. 139:17-20. (J.A. p. 52).

[113] See Facts at 4-6.

[114] Nance v. Goodyear Tire & Rubber Co., 527 F.3d 539, 553 (6th Cir. 2008).

14801_00/1701/CWG-3556077_5

The Sixth Circuit has held that "[t]o raise a genuine issue of material fact on the validity of an employer's explanation for an adverse job action, the plaintiff must show, again by a preponderance of the evidence, either (1) that the proffered reasons had no basis in fact; (2) that the proffered reasons did not actually motivate the action; or (3) that they were insufficient to motivate the action."[115]  Richardson may not merely question "the soundness of [Astec's] business judgment…as a means of showing pretext."[116]  Conclusory allegations and Richardson's subjective belief—that the accusations against her are lies—are insufficient to carry her burden, as a matter of law.[117]  Rather, "as long as [Astec] has an honest belief in its proffered nondiscriminatory reason," Plaintiff cannot prevail on his discrimination claims.[118]

Richardson repeatedly violated Astec's Core Values as it pertains to how she should treat others, particularly her coworkers.[119]  It was for this reason that she initially received her Final Written Warning, and was then terminated six months later.

Richardson has no evidence that her age had anything to do with her termination, other than her own speculation.[120]  She has pointed to no documents; has no additional testimony;

---

[115]  Kocsis v. Multi-Care Mgmt., 97 F.3d 876, 883 (6th Cir. 1996).

[116]  Brocklehurst v. PPG Indus., Inc., 123 F.3d 890, 898 (6th Cir. 1997).

[117]  See e.g., Byrd v. Stone, No. 97-1841, 2000 U.S. App. LEXIS 441 *12 (6th Cir. Jan. 6, 2000) (holding "subjective skepticism of the truth of [the employer's] representation does not raise a triable issue as to pretext.); Walls v. Johnson, 229 F. Supp. 3d 678, 691 (E.D. Tenn. Jan. 15, 2017) (McDonough, J.) (stating that a plaintiff's subjective belief is insufficient to create a genuine issue of material fact as to whether retaliation for engaging in protected activity were the actual reason for his termination.); Manire v. Am. Equity Mortg., Inc., 2005 U.S. Dist. LEXIS 48213, *10 (E.D. Mich. Sept. 6, 2005) ("A plaintiff's subjective belief does not create an issue of fact."); Guiyang Bearing Factory v. Guidon, Inc., 1997 U.S. Dist. LEXIS 21384, *10 (W.D. Mich. Dec. 15, 1997) ("Thus, although evidence of plaintiffs' subjective belief may be considered, it is not considered in a vacuum and cannot, standing alone, suffice to create a genuine issue of material fact.").

[118]  Majewski v. Automatic Data Processing, Inc., 274 F.3d 1106, 1117 (6th Cir. 2001).

[119]  See e.g., Facts at 4-6.

[120]  See e.g., Byrd, No. 97-1841, 2000 U.S. App. LEXIS 441 *12 (6th Cir. Jan. 6, 2000) (holding "subjective skepticism of the truth of [the employer's] representation does not raise a triable

14801_00/1701/CWG-3556077_5

nothing to support her claim, other than her own belief. Her age discrimination allegations thus hinge solely on the fact that Lori McMahan allegedly asked her about her retirement plans on a few occasions—10-15 times over the course of three years—and that she had her payroll responsibilities removed. Richardson characterizes this latter assertion as a demotion, but she did not lose any pay or any other responsibilities. To be sure, she retained all other responsibilities, including directing the work of two subordinate employees.[121]

And as it pertains to Ms. McMahan's retirement comments, the evidence shows that Ms. McMahan made such comments because she, had been instructed to create succession plans for each of the individuals in the Accounting Department.[122] The purpose of the planning was to ensure that each employee had a backup that could do their work in the event that they left the company or were unavailable.[123] It therefore was necessary to know Richardson's future plans. And, as Richardson testified, these comments ranged over the course of three years,[124] and there is no indication that the comments were temporally linked to her termination.[125]

---

issue as to pretext.); <u>Walls</u>, 229 F. Supp. 3d at 691 (McDonough, J.) (stating that a plaintiff's subjective belief is insufficient to create a genuine issue of material fact as to whether retaliation for engaging in protected activity were the actual reason for his termination.); <u>Manire</u>, 2005 U.S. Dist. LEXIS 48213, *10 (E.D. Mich. Sept. 6, 2005) ("A plaintiff's subjective belief does not create an issue of fact."); <u>Guiyang Bearing Factory v. Guidon, Inc.</u>, 1997 U.S. Dist. LEXIS 21384, *10 (W.D. Mich. Dec. 15, 1997) ("Thus, although evidence of plaintiffs' subjective belief may be considered, it is not considered in a vacuum and cannot, standing alone, suffice to create a genuine issue of material fact.").

[121] Richardson 119:2-12 (J.A. p. 47); McMahan Dep. 143:4-17 (J.A. p. 140); Richardson Dep. Ex. 3 (J.A. p. 95).

[122] McMahan Dep. 65:4-17. (J.A. p. 130).

[123] McMahan Dep. 65:4-17. (J.A. p. 130).

[124] Richardson Dep. 91:18-25; 92:1-9. (J.A. pp. 40-41).

[125] <u>See</u> <u>Bell v. Prefix, Inc.</u>, 321 F. App'x 423, 426 (6th Cir. 2009) (discussing how temporal connection can, when accompanied by other independent evidence, be an indicator of pretext).

To be sure, Richardson's write-up and termination were directly linked to complaints that Ms. McMahan received regarding her behavior towards her coworkers. The Sixth Circuit directly addressed a similar situation in <u>Leonard v. Twin Towers</u>.[126]

In <u>Leonard</u>, the plaintiff argued that his termination for allegedly using a racial slur was a pretext for illegal age discrimination. To establish pretext, the plaintiff presented evidence that his supervisor "asked him when he was going to retire as often as once a week, even though he consistently told [him] that he planned on working until he was 75."[127] The plaintiff further alleged that the supervisor "regularly told him that 'he should start thinking about retirement' and recommended that he 'retire at about 70 and go out and enjoy life.'"[128] The plaintiff argued that the supervisor's statements indicated that his termination was due to his age, not his performance.[129] But the trial court granted summary judgment to the employer and found that the plaintiff had not introduced evidence sufficient to establish pretext.

The Sixth Circuit affirmed the district court's grant of summary judgment to the employer. The court held that while "age-related comments referring directly to a worker may support an inference of age discrimination, … not all age-related comments created a genuine issue of material fact necessary to survive summary judgment."[130] The court held that "for age-related comments to support a finding of intentional discrimination, there must be some connection between the discriminatory comments and the adverse employment decision"

---

[126] 6 Fed. Appx. 223 (6th Cir. 2001).
[127] <u>Leonard</u>, 6 Fed. Appx. at 229.
[128] <u>Id.</u>
[129] <u>Id.</u>
[130] <u>Id.</u> at 229.

14801_00/1701/CWG-3556077_5

because "[i]solated and ambiguous statements are too abstract, in addition to being irrelevant and prejudicial, to support a finding of age discrimination."[131]

Viewing the comments in the light most favorable to the plaintiff, the court found that the supervisor's "repeated inquiries and suggestions might be sufficient to allow a rational jury to conclude that [the supervisor] harbored some age-related bias against [the plaintiff]."[132] But the court noted that the plaintiff must also "provide sufficient evidence that would allow a rational jury to conclude that the decision to fire him was based on a discriminatory animus" to survive a motion for summary judgment.[133] Leonard was unable to introduce any evidence that the supervisor's alleged discriminatory bias influenced the decisionmaker's decision to terminate his employment.[134] The court therefore held that his termination was not unlawful and that summary judgment had been properly granted to the employer.

Another apt example can be found in Woythal v. Tex-Tenn Corp.[135] In Woythal, the plaintiff alleged that his employer's repeated questions about his retirement plans constituted discrimination.[136] But, as the court noted, he did not produce any evidence that the employer "pointedly suggested that he retire."[137] And to be sure, the employer had a legitimate concern in making sure that it had continued support in plaintiff's position.[138] The Sixth Circuit affirmed summary judgment in favor of the employer and noted that though plaintiff may have believed that questioning and about his retirement plans constituted pressure and discrimination, the

---

[131] Id.
[132] Leonard v. Twin Towers, 6 Fed. Appx. 223, 231 (6th Cir. 2001).
[133] Id.
[134] The supervisor was not the decisionmaker with respect to Leonard's termination.
[135] Woythal v. Tex-Tenn Corp., 112 F.3d 243 (6th Cir. 1997).
[136] Id. at 247.
[137] Id.
[138] Id.

14801_00/1701/CWG-3556077_5

"mere personal belief, conjecture, and speculation are insufficient to support an inference of age discrimination."[139]

As can be seen here, Astec had legitimate non-discriminatory reasons for terminating Richardson—her repeated violation of the company's Core Values. It is her responsibility to put forth affirmative evidence, more than her mere conjecture, that Astec's reason is pretextual. But she has put forth no evidence other than her own belief that her age was the reason for her termination. No corroborating witnesses. No documentation. Nothing. This is not enough, and thus her claim should be dismissed.

### B. Astec had an honest belief that the complaints that it received from Richardson were legitimate and that they warranted her termination.

Richardson offers no evidence from which a reasonable jury could conclude that Astec's stated reason was a pretext for unlawful discrimination. But even if the evidence upon which Astec relied was ultimately incorrect—Richardson posits that nearly all of the complaints against her were lies[140]—this does not create a genuine issue of fact so long as Astec had an honest belief in its proffered reason for termination.[141] What matters is whether Astec "made a reasonably informed and considered decision" in its rationale when it reasonably relied on the complaints against Richardson that were before it at the time that it made the decision to terminate.[142]

Multiple individuals complained about Richardson's behavior toward her coworkers— behavior that violated Astec's Core Values.[143] Relying on these complaints, Lori McMahan

---

[139] Id. at 247-48.
[140] Richardson Dep. 123:7-11 (J.A. p. 48); 154:24-25 (J.A. p. 59); 155:1-25 (J.A. p. 60).
[141] See Majewski v. Automatic Data Processing, Inc., 274 F.3d 1106, 1117 (6th Cir. 2001); Kocsis v. Multi-Care Mgmt., 97 F.3d 876, 883 (6th Cir. 1996).
[142] Smith v. Chrysler Corp., 155 F.3d 799, 807 (6th Cir. 1998).
[143] See Facts at 4-6.

14801_00/1701/CWG-3556077_5

issued a Final Written Warning to Richardson on June 13, 2016.[144] Upon receiving additional complaints from Joe Oswald and others, and given that Richardson was on a Final Written Warning, Ms. McMahan made the decision to terminate Richardson.[145] This decision was supported by her honest belief as to Richardson's conduct. Thus, Richardson's conclusory, unsupported allegations that those who complained were lying is insufficient to create a genuine issue of fact. Her ADEA claim should thus be dismissed.

## CONCLUSION

Richardson was a manager in Astec's Accounting Department. First, as the Accounting Manager, and next as the Accounts Payable Manager. During her time in both roles, her job consisted of management duties, she directed the work of at least two subordinates, had the ability to hire or fire, and exercised discretion and independent judgment in the execution of her duties. Despite the fact that she was competent in the execution of her job duties, her repeated violations of Astec's Core Values to respect other individuals—not her age—ultimately led to her termination. Her claims are without merit, and should be dismissed.

---

[144] McMahan Dep. 71:17-25 (J.A. p. 133); Richardson Dep. Ex. 7 (J.A. pp. 97-99).
[145] McMahan Dep. 126-27.  (J.A. pp. 137-138).

Respectfully submitted,

CHAMBLISS, BAHNER & STOPHEL, P.C.

By: _____/s/Justin L. Furrow_____
     Justin L. Furrow, TN BPR # 027667
     Charles W. Gilbreath II, TN BPR # 033644
Liberty Tower, Suite 1700
605 Chestnut Street
Chattanooga, TN 37450
Tel: 423.757.0221
Fax: 423.508.1221
jfurrow@chamblisslaw.com
cgilbreath@chamblisslaw.com
     *Attorneys for Astec, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and exact copy of the foregoing **Astec, Inc.'s Memorandum in Support of Its Motion for Summary Judgment** has been filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

This 14th day of January, 2019.

By: ____/s/Justin L. Furrow_____

14801_00/1701/CWG-3556077_5