# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT CHATTANOOGA

REBECCA RICHARDSON,⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀⠀Case No. 1:18-cv-20
⠀⠀⠀⠀⠀*Plaintiff,*⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀⠀Judge Travis R. McDonough
v.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀⠀Magistrate Judge Susan K. Lee
ASTEC, INC.,⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀*Defendant.*⠀⠀⠀⠀⠀⠀)

## MEMORANDUM OPINION

Before the Court is a motion for summary judgment filed by Defendant Astec, Inc.

("Astec") (Doc. 19) and a motion for partial summary judgment filed by Plaintiff Rebecca

Richardson (Doc. 22).  Also before the Court is Richardson's motion to exclude certain evidence

from the Court's consideration in ruling on the parties' cross-motions for summary judgment

pursuant to Rule 37(c)(1) of the Federal Rules of Civil Procedure.  (Doc. 35.)  For the following

reasons, Astec's motion for summary judgment (Doc. 19) will be **DENIED**, Richardson's

motion for partial summary judgment (Doc. 22) will be **DENIED**, and Richardson's motion to

exclude (Doc. 35) will be **DENIED AS MOOT**.

## I.⠀⠀BACKGROUND

Rebecca Richardson began working at Astec in 1980 and worked her way up through the

accounting department in various positions over the next thirty-five years.  (Doc. 21, at 15, 183.)

Since 2005, Lori McMahan, Astec's Controller, has supervised the accounting department,

including Richardson.  (*Id.* at 216–17; Doc. 25-1, at 22.)  From the early 1990s until June 2016,

Richardson worked as Astec's Accounting Manager.  (Doc. 21, at 15–18, 183.)  According to

Richardson, while working as Astec's Accounting Manager, her job duties included: (1) facilitating "the running of payroll by [Astec's] outside vendor, ADP"; (2) "collecting time reports from foremen and entering various pieces of information given to [her] by others," including information regarding vacations taken, pay changes and terminations; (3) making entries in the ADP system to correct mistakes; (4) producing automated reports and transmitting information to an outside vendor who managed Astec's 401k plan; (5) filing sales and use tax returns in the places where Astec sold products; (6) reconciling bank statements; (7) sending purchase order invoices to appropriate persons for payment; (8) seeking approval of non-purchase order invoices and placing approved non-purchase order invoices in line for payment; (9) initiating wire transfers; (10) facilitating reimbursements for employees who charged expenses to Astec's Diners Club credit cards; and (11) processing expense reports. (Doc. 21, at 183–86.) Richardson asserts that these responsibilities were generally clerical in nature and involved routine bookkeeping. (*Id*. at 183–86.) Richardson also avers that, as Accounting Manager, she did not have any discretion or authority to create or implement policy related to these responsibilities. (*Id*. at 183–86, 189.) Additionally, Richardson acknowledges that, while Accounting Manager, she had the assistance of Debbie Daugherty, a payroll clerk, and Ann Daniel, an accounts payable clerk, but avers that she did not supervise or manage them. (*Id*. at 186–87.) According to Richardson, Daugherty and Daniel had regularly assigned tasks they were responsible for completing on their own, and she was simply available to answer their questions. (*Id*.) Richardson avers that she typically spent no more than five minutes each day answering questions from Daugherty and Daniel and that she never spent time checking up on them because they performed their jobs well. (*Id*. at 188.)

Astec does not dispute Richardson's general description of her job responsibilities as

Accounting Manager, but contends that Richardson's responsibilities required her to exercise significant discretion and manage other Astec employees. (Doc. 30, at 132–33.) For example, McMahan avers that Richardson routinely approved invoices without department head or other approval, which required her to review a bill, analyze it, and decide whether it should be paid. (*Id*. at 132.) According to McMahan, Richardson also "routinely directed the work of her direct reports, Ann Daniel, Debbie Daugherty, and Maureen Grisham" and "had a say in how her own direct reports received raises." (*Id*. at 134.) According to McMahan, Richardson also had the ability to hire and fire employees. (Doc. 21, at 120–23.) While Richardson acknowledges that she interviewed candidates "once or twice," she avers she only asked questions related to experience. (*Id*. at 189.) Richardson further avers that she never made hiring or firing decisions and did not have the authority to hire or fire employees. (*Id*.)

Joe Oswald, Astec's Assistant Controller, also maintains that Richardson exercised significant discretion regarding how she executed her responsibilities as Accounting Manager. (*Id*. at 172–73.) For example, Oswald testified that Richardson elected to review the payroll registry manually rather than rely on other systems available to her. (*Id*.) Oswald further testified that when performing sales tax functions for Astec, Richardson had the discretion to decide when, where, how often, and at what rate such taxes should be paid. (*Id*. at 175.)

According to Richardson's yearly performance appraisals between 2011 and 2015, McMahan's assessment of Richardson's work was very favorable. (*See* Doc. 21, at 199–214, Doc. 25-1, at 30.) In Richardson's 2011 performance evaluation, McMahan noted that Richardson is a "pleasure" to work with, "self-motivated," requires "little to no supervision," and has been an "[e]xcellent employee since I became her supervisor in 2005." (Doc. 21, at 202.) In 2012, McMahan commented that Richardson is an "[e]xcellent employee" and that "I wish I had

10 more employees like [Richardson]." (*Id*. at 206.) In 2013, McMahan noted that Richardson "is a self conscious worker and gives 100% to be a top performer. Having this quality has made her well respected by her direct reports, coworkers, and management." (Doc. 21, at 209.) McMahan also noted that "[Richardson] is not afraid to tell you what she thinks. That is very valuable whether you like it or not." (*Id*. at 210.) In 2014, McMahan noted that Richardson "maintains a professional attitude even when dealing with difficult people," "[s]he is professional in all aspects of her work," and her "work ethic dependability and teamwork makes her an outstanding employee." (*Id*. at 213.) In 2015, McMahan again characterized Richardson as an excellent employee and noted that "[Richardson's] work ethic, dependability and teamwork makes her an outstanding employee." (Doc. 21, at 143–46; Doc. 25-1, at 30.) Malcom Swanson, Astec's President at the time, did, however, note on Richardson's 2015 performance review that "[Richardson] does a good job & is 'Astec to the core' but she must be careful to live by all four [Astec] core values including 'Respect for All Individuals.'" (Doc. 21, at 143.)

On June 13, 2016, Richardson received an "Employee Warning/Reprimand" stating that she violated Astec's core values and exhibited "unacceptable manager behavior." (Doc. 21, at 97.) In a meeting with McMahan and Donna Locklear, Astec's Human Resources Manager, on June 13, 2016, McMahan communicated to Richardson that she and others had received complaints about how Richardson behaved toward employees and subsidiary companies, including, among other things, complaints that she: (1) has a rude and abrupt manner; (2) talks down to others; (3) "treats you like a dog"; (4) blames people for mistakes they had nothing to do with; (5) yells at people and implies they are stupid; (5) never has anything positive to say; and

(6) never admits that she was wrong.[1]  (Doc. 21, at 98.)

At this same meeting, McMahan informed Richardson that she was restructuring Astec's accounting department and transitioning her to the role of Accounts Payable Manager.  (*Id.*)  As part of this change, McMahan told Richardson that she was being relieved of all payroll duties, which Richardson avers constituted at least half of her total job responsibilities.  (*Id.* at 97–98, 187.)  According to Richardson, she considered the change in responsibilities to be a demotion, but concedes that she did not lose any seniority or pay as a result.[2]  (*Id.* at 46–47, 187.)

Around this time, McMahan, working with the human resources department, created a new organizational chart for the accounting department.  (*Id.* at 95, 136.)  Although the organizational chart indicates that Daniel and Grisham reported to Richardson, Richardson contends the organizational chart does not reflect how the accounting department actually operated.  (*Id.* at 95, 187.)  According to Richardson, Daniel did report to her, but she continued to only spend approximately five minutes a day answering questions from Daniel and ten minutes a day handling paperwork she received from Daniel.  (*Id.* at 187–89.)  Richardson contends that Grisham did not report to her and that Grisham primarily worked with accounts receivable, which Oswald supervised.  (*Id.* at 187, 195.)  According to Richardson, Grisham's only connection to accounts payable involved her work with "drop shipments," which involved the creation of an account payable and an account receivable.  (*Id.* at 187.)  Richardson avers that

---

[1] Richardson contends that she did not learn about the conduct forming the basis for issuance of the Final Warning until the discovery phase of this litigation.  Richardson denies the truthfulness of the underlying allegations.  (Doc. 21, at 190; Doc. 25-1, at 7–10.)

[2] Richardson's 2016 performance appraisal, conducted on July 26, 2016, notes that she needs to "[c]ontinue to work on communications with others," "[f]ocus on respect for all individuals," and "maintain a professional attitude when dealing with others," but also notes that she is a "team player," "jumps right in and performs whatever task is needed," and is "very dependable." (Doc. 21, at 102–03.)

she never had any responsibilities involving drop shipments and that her dealings with Grisham were isolated and rare. (*Id.*) Richardson acknowledges, however, that she was required to sign paperwork concerning Grisham, including a form for Grisham's pay raise, the amount of which Richardson contends had already been determined by McMahan. (*Id.* at 188.) McMahan, however, contends that Richardson supervised Grisham. (Doc. 30, at 134–35.) In support of this assertion, Astec points to a November 2016 e-mail from McMahan to Richardson regarding appropriate workplace conduct, which McMahan asked Richardson to forward to her direct reports. (Doc. 21, at 108–09.) Richardson proceeded to forward McMahan's e-mail to Daniel and Grisham. (*Id.*) Additionally, Astec notes that, when Richardson was asked to provided suggested salary increases for her direct reports, Richardson responded by suggesting raises for Daniel and Grisham. (*Id.* at 110–12.)

On January 16, 2017, Oswald submitted a complaint to human resources regarding an interaction with Richardson. (Doc. 21, at 104.) Oswald's complaint stated:

> I would like to formally file a complaint against [Rebecca] Richardson for the following reasons:
>
> - On Friday, January 13, 2017 after accusing me of not updating payroll rates for two employees [Richardson] left my office and projected in a loud voice for our entire department to hear, 'I guess 30 year olds don't make mistakes.'
>
> - Later in the day, an employee came to talk to [Richardson] about a pay rate change for Mark Gualt. His rate had not been updated for the annual pay increase. [Richardson] came to address the issue with me, and after discussing the problem, [she] left my office and again projected in a loud voice 'I can't believe a 30 year old will [sic] admit they made a mistake.'
>
> - Also, on January 12, 2017 [Richardson] talked in a very demeaning manner to Debbie Daugherty to the point Ms. Daugherty began crying. This event was reported to me second hand by our temporary payroll employee, Judy Lee.
>
> - In addition, on Friday, January 13, 2017 an employee from the Purchasing Department approached me with a question regarding a payroll error. This

> employee, who will remain nameless unless I need to provide the name, expressed concern about going to [Richardson] to discuss the issue because of her temperament. The employee stated an interest in resolving the issue without her.

(*Id*.) Richardson avers that she never spoke in a disrespectful tone to Oswald. (*Id*. at 190.) Richardson admits that she did make a comment to Daniel that "I guess 30-year-olds don't make mistakes," but claims that comment was "made in a normal tone of voice outside of anyone's hearing." (*Id*.) Additionally, Daugherty avers that Richardson never made her cry; rather, she cried after receiving upsetting news about the health of a co-worker. (*Id*. at 192–93.) After Daugherty received this news, Oswald approached Daugherty and asked if Richardson made her cry. (*Id*. at 193.) When Daugherty responded in the negative, Oswald told her she should report Richardson to human resources. (*Id*.) According to Daugherty, when she again stated she would not report Richardson to human resources, Oswald replied that he would make a complaint against Richardson to human resources. (*Id*.) Daniel, Daugherty, and Brenda Hixson, an invoicing coordinator in the accounting department, aver that Richardson acted professionally toward others at work and that they never observed Richardson being mean or disrespectful to anyone at work. (*Id*. at 192, 195, 197.)

On January 16, 2017, after Oswald submitted his complaint, McMahan and Oswald met with Locklear and, at the conclusion of the meeting, decided to terminate Richardson's employment. (Doc. 25-1, at 97–99.) Richardson was seventy years old when Astec terminated her. (Doc. 30, at 129.) According to Richardson, she was not given any details about the complaints underlying the decision to terminate her, and, when she asked McMahan about who lodged the complaint, McMahan refused to answer and told her she could either retire or Astec would terminate her. (Doc. 25-1, at 12.) McMahan admits that Richardson was not given an opportunity to tell her side of the story, which deviated from her training regarding how to

handle employee grievances. (*Id.* at 59–60, 64.) In her deposition, McMahan could not explain why she failed to give Richardson an opportunity to tell her side of the story. (*Id.* at 59.) Richardson's separation notice states that the circumstances of her termination were for "[i]nappropriate behavior and unsatisfactory job performance, including violation of final warning." (Doc. 21, at 79.)

Richardson contends that Astec terminated her because of her age. (*See* Doc. 21, at 49.) According to Richardson, beginning in or around 2013 until her termination in 2017, McMahan asked her questions about her retirement plans, estimating that such questions occurred ten to fifteen times during this period. (*Id.* at 40–41; Doc. 25-1, at 2–3, 6.) Richardson testified that Oswald made similar inquiries about her retirement plans. (Doc. 21, at 40–41, 44.) Richardson also testified that two or three days before her termination, McMahan asked when she was going to retire, noting that she was about to be seventy years old. (Doc. 25-1, at 16–17.) Richardson responded that she planned to work until she was at least seventy-five years old. (*Id.*) McMahan maintains any questions about Richardson's retirement plans were solely for purposes of succession planning, citing the need to ensure that certain responsibilities were covered in the event an employee resigned, retired, or otherwise ended their employment relationship with Astec. (Doc. 21, at 130.)

Additionally, Richardson maintains that Oswald, an employee in his thirties, engaged in conduct that violated Astec's core values, including that Oswald "broke in to shouting fits at employees" and once told her to "hush and get out of [his] office." (*Id.* at 52.) Brenda Hixson also avers that Oswald engaged in rude and disrespectful behavior toward other employees. (*Id.* at 197.)

> For example, once in the summer of 2016, when payroll was late, I mentioned it
> to [Oswald] since he had become responsible for payroll after [Richardson's]

demotion.  Jo Henderson, who was the payroll specialist, was absent that day.  In front of Maureen Grisham and Ann Daniel, [Oswald] yelled and screamed at me to the point I felt belittled and began to cry.  I immediately reported [Oswald's] behavior to [McMahan], but nothing ever happened to my knowledge."

(*Id.*)

In addition to the foregoing, Richardson testified that she worked long hours as Accounting Manager and Accounts Payable Manager.  (*See id.* at 34–39, 55–58.)  According to Richardson, in 2015 and 2016, while serving as Accounting Manager, she regularly worked ten-hour days five days a week, and, when Daugherty was out, would work approximately twelve-hour days and would often take work home with her.  (*Id.* at 37–38.)  Richardson also testified that, as Accounts Payable Manager, she worked ten-hour days five days a week, and would work on weekends approximately one day a month for four hours.  (*Id.* at 34–36, 38–39.)  Richardson estimates that, while working as Accounting Manager and Accounts Payable Manager, she worked approximately fifty hours per week.  (*Id.* at 55–58.)  According to Richardson, during her employment as Accounting Manager and Accounts Payable Manger, she received a flat salary and did not receive any overtime compensation.  (*See id.* at 51.)

Richardson initiated the present action on January 29, 2018.  (Doc. 1.)  In her complaint, Richardson asserts claims against Astec for violating the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623.  (*See generally id.*)  The parties have filed cross-motions for summary judgment (Docs. 19, 22), and these motions are now ripe for the Court's review.

## II.     STANDARD OF LAW

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The Court views the evidence in the light most favorable to the nonmoving party and

makes all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co.,*
*Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*,
253 F.3d 900, 907 (6th Cir. 2001).

The moving party bears the burden of demonstrating that there is no genuine dispute as to
any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349
F.3d 888, 897 (6th Cir. 2003). The moving party may meet this burden either by affirmatively
producing evidence establishing that there is no genuine issue of material fact or by pointing out
the absence of support in the record for the nonmoving party's case. *Celotex*, 477 U.S. at 325.
Once the movant has discharged this burden, the nonmoving party can no longer rest upon the
allegations in the pleadings; rather, it must point to specific facts supported by evidence in the
record demonstrating that there is a genuine issue for trial. *Chao v. Hall Holding Co., Inc.*, 285
F.3d 415, 424 (6th Cir. 2002).

At summary judgment, the Court may not weigh the evidence; its role is limited to
determining whether the record contains sufficient evidence from which a jury could reasonably
find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). A mere
scintilla of evidence is not enough; the Court must determine whether a fair-minded jury could
return a verdict in favor of the non-movant based on the record. *Id.* at 251–52; *Lansing Dairy,*
*Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). If not, the Court must grant summary
judgment. *Celotex*, 477 U.S. at 323.

The standard of review when parties file cross-motions for summary judgment is the
same as when only one party moves for summary judgment. *Taft Broad. Co. v. United States*,
929 F.2d 240, 248 (6th Cir. 1991). When there are cross-motions for summary judgment, the
court must "evaluate each party's motion on its own merits, taking care in each instance to draw

all reasonable inferences against the party whose motion is under consideration." *Id*. In considering cross-motions for summary judgment, the court is "not require[d] . . . to rule that no fact issue exists." *Begnaud v. White*, 170 F.2d 323, 327 (6th Cir. 1948).

## III.    ANALYSIS

### a.  Fair Labor Standards Act

The parties have filed cross-motions for summary judgment on Richardson's claim for violation of the FLSA. (Docs. 19, 22.) Richardson contends that the undisputed facts demonstrate Astec violated the FLSA by failing to pay her overtime compensation for working in excess of forty hours per week while Accounting Manager and Accounts Payable Manager. (*See generally* Doc. 23.) Conversely, Astec contends that it is entitled to summary judgment because the undisputed evidence demonstrates that Richardson was an exempt employee under the FLSA and therefore not entitled to overtime compensation. (Doc. 20, at 7–13.)

The FLSA generally requires employers to compensate any employees who work in excess of forty hours per week "at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). However, the FLSA also provides several exemptions to the overtime-pay requirements, including an exemption for "any employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). "An employer seeking an exemption from the overtime requirements of the [FLSA] must prove that each employee is entitled to the exemption by plain and unmistakable evidence." *Killion v. KeHE Distributors, LLC*, 761 F.3d 574, 588 (6th Cir. 2014) (quoting *Hodgson v. Klages Coal & Ice Co.*, 435 F.2d 377, 382 (6th Cir. 1970)). "Whether employees are exempt from the requirements of the [FLSA]," however, "is primarily a question of fact." *Id*.

Astec asserts that Richardson is exempt from overtime compensation under the FLSA

because she qualifies for both the administrative exemption and the executive exemption. (Doc. 20, at 8–14.) Richardson contends that she is entitled to summary judgment on her FLSA claim for unpaid overtime because Astec cannot satisfy its burden of demonstrating that either of these exemptions applies to her. (Doc. 23, at 11–25.)

To demonstrate that Richardson is exempt as an administrative employee under the applicable Department of Labor regulations, Astec must show that: (1) Richardson is "compensated on a salary or fee basis at a rate of not less than $455 per week . . . exclusive of board, lodging or other facilities";[3] (2) Richardson's "primary duty is the performance of office or non-manual work directly related to the management or general business operations of [Astec] or [Astec's] customers"; and (3) Richardson's "primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a). In this case, the parties do not dispute that Richardson is compensated on a salary basis at a rate not less than $455 per week and that her primary duty is the performance of office work related to Astec's general business operations. (Doc. 20, at 12; Doc. 23, at 12.) Thus, the only part of the administrative-exemption inquiry at issue is whether Richardson's primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

According to United States Department of Labor regulations, the exercise of discretion

---

[3] The text of 29 C.F.R. § 541.200(a)(1) was slated to change on December 1, 2016, to read: "Compensated . . . at a rate per week of not less than the 40th percentile of weekly earnings of full-time nonhourly workers in the lowest-wage Census Region." The United States District Court for the Eastern District of Texas has enjoined the Department of Labor from implementing or enforcing that change, along with certain other proposed changes to Chapter 541. *Nevada v. U.S Dep't of Labor*, 218 F.Supp.3d 520 (E.D. Tex. 2016); *see also Perry v. Randstad Gen. Partner (US) LLC*, 876 F.3d 191, 197 n.4 (6th Cir. 2017). Neither the proposed change to 29 C.F.R. § 541.200(a)(1) nor the injunction impacts the Court's analysis in this case.

and independent judgment "involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered."[4] 29 C.F.R. § 541.202(a). Additionally, "[t]he exercise of discretion and independent judgment implies that the employee has authority to make an independent choice, free from immediate direction or supervision. However, employees can exercise discretion and independent judgment even if their decisions or recommendations are reviewed at a higher level." 29 C.F.R. § 541.202(c). On the other hand, "[t]he exercise of discretion and independent judgment must be more than the use of skill in applying well-established techniques, procedures or specific standards described in manuals or other sources." 29 C.F.R. § 541.202(e). "The exercise of discretion and independent judgment also does not include clerical or secretarial work, recording or tabulating data, or performing other mechanical, repetitive, recurrent or routine work. An employee who simply tabulates data is not exempt, even if labeled as a 'statistician.'" *Id*. "The term 'matters of significance' refers to the level of importance or consequence of the work

---

[4] Factors to consider when determining whether an employee exercises discretion and independent judgment with respect to matters of significance include, but are not limited to:

> whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long- or short-term business objectives; whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.

29 C.F.R. § 541.202(b).

performed." 29 C.F.R. § 541.202(a)

In this case, genuine issues of material fact remain as to whether Richardson exercised discretion and independent judgment with regard to matters of significance while Astec employed her as Accounting Manager and Accounts Payable Manager. Richardson avers that her responsibilities as Accounting Manager and Accounts Payable Manager were clerical, involved routine bookkeeping, and primarily consisted of entering data she received from others. (Doc. 21, at 183–86.) Richardson specifically avers that her duties as Accounting Manager and Accounts Payable Manager did not allow her to exercise any discretion. (*Id*.) Astec counters that Richardson exercised significant discretion regarding how she executed her responsibilities as Accounting Manager and Accounts Payable Manager. (Doc. 21, at 172–73.) For example, Oswald testified that Richardson elected to review the payroll registry manually rather than rely on other systems available to her and that, when performing sales tax functions, Richardson had the discretion to decide when, where, how often, and at what rate such taxes should be paid. (Doc. 21, at 175.) McMahan also avers that Richardson routinely approved invoices without department head or other approval, which required her to review a bill, analyze it, and decide whether it should be paid. (Doc. 30, at 132.) This conflicting evidence demonstrates that genuine issues of material fact remain as to whether Richardson's primary duties included the exercise of discretion and independent judgment with respect to matters of significance and, thus, whether Richardson qualifies for the administrative exemption under the FLSA.

The parties also dispute whether the executive exemption to the FLSA's overtime-pay requirements applies to Richardson—Richardson contends that Astec cannot meet its burden of showing that the executive exemption applies (Doc. 23, at 17–25), and Astec contends that the undisputed evidence demonstrates that the executive exemption applies as a matter of law (Doc.

20, at 8–12).  To demonstrate that Richardson is exempt as an executive employee under the applicable Department of Labor regulations, Astec must show that:  (1) Richardson is "compensated on a salary or fee basis at a rate of not less than $455 per week . . . exclusive of board, lodging or other facilities"; (2) Richardson's "primary duty is management of the enterprise in which the employee is employed . . . ."; (3) Richardson "customarily and regularly directs the work of two or more other employees"; and (4) Richardson "has the authority to hire or fire other employees or whose suggestions and recommendations as to hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight."  29 C.F.R. § 541.100.

Like the application of the administrative exemption, genuine issues of material fact remain as to whether the executive exemption applies to Richardson.  First, the parties have submitted conflicting evidence as to whether Richardson customarily and regularly directed the work of two or more other employees as Accounting Manager and Accounts Payable Manager. Astec asserts that, as Accounting Manager, Richardson routinely directed the work of Daniel, Daugherty, and Grisham, and, as Accounts Payable Manager, Richardson directed the work of Daniel and Grisham.  (Doc. 30, at 134.)  In support of this assertion, Astec notes that when McMahan asked her to forward an e-mail to her direct reports, Richardson forwarded the e-mail to Daniel and Grisham.  (Doc. 21, at 108–09.)  Astec also points to another e-mail in which McMahan asked Richardson to provide suggested salary increases for her direct reports, which Richardson responded to by suggesting raises for Daniel and Grisham.  (*Id*. at 110–12.)

Richardson does not dispute that, while Accounting Manager, she had the assistance of Daugherty and Daniel but avers that she did not supervise or manage them.  (*Id*. at 186–87.) According to Richardson, Daugherty and Daniel had regularly assigned tasks they were

responsible for completing on their own and she was simply available to answer their questions. (*Id*.) Richardson avers that she typically spent no more than five minutes each day answering questions from Daugherty and Daniel and that she never spent time checking up on them because they performed their jobs well. (*Id*. at 188.) Richardson also avers that, as Accounting Manager and Accounts Payable Manager, she never supervised or directed Grisham. (*Id*. at 187–88.) Rather, Grisham's only connection to accounts payable involved her work with "drop shipments," which involved the creation of an account payable and an account receivable. (*Id*. at 187.) Richardson avers that she never had any responsibilities involving drop shipments and that her dealings with Grisham were isolated and rare. (*Id*. at 187–88.)

Resolution of this conflicting evidence necessarily requires credibility determinations that make entry of summary judgment inappropriate. While Astec may be able to use Richardson's e-mails to Daniel and Grisham to undercut her averments that she did not actively manage and direct the work of Daniel and Grisham, the fact that Richardson forwarded certain e-mails to direct reports or made salary recommendations regarding certain individuals does not conclusively establish how Astec's accounting department operated or the scope of Richardson's management responsibilities, if any, within the accounting department.

Similarly, genuine issues of material fact remain as to whether Richardson had the authority to hire or fire other employees or whether Astec gave her personnel recommendations any weight. Richardson specifically averred that she never hired or fired anyone, she did not have the authority to hire or fire anyone, and pay raises were determined by management. (Doc. 21, at 189.) Additionally, while Richardson acknowledges that she interviewed candidates "once or twice," she avers she "never made a decision to hire." (*Id*.) Conversely, McMahan testified that Richardson had the ability to hire and fire employees (*id*. at 120–23), and that she "had a say

in how her own direct reports received raises" (Doc. 30, at 134). Again, resolution of this conflicting evidence requires credibility determinations more appropriately left to a jury. Accordingly, genuine issues of material fact remain as to whether the executive exemption to the FLSA's overtime-pay requirements applies to Richardson.

Because genuine issues of material fact remain as to whether Richardson is exempt from the FLSA's overtime-pay requirements, the Court will **DENY** Richardson's motion for partial summary judgment (Doc. 22) and will **DENY** Astec's motion for summary judgment to the extent it seeks summary judgment on Richardson's claim under the FLSA (Doc. 19).

### b. *Age Discrimination in Employment Act*

Astec moves for summary judgment on Richardson's claim for violation of the ADEA, arguing that the undisputed evidence demonstrates her claim for age discrimination fails as a matter of law. The ADEA prohibits an employer from failing or refusing to hire, discharging or discriminating "against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's age . . . ." 29 U.S.C. § 623(a)(1); *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009). "A plaintiff may establish a violation of the ADEA by either direct or circumstantial evidence." *Id.* "The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." *Schoonmaker v. Spartan Graphics Leasing, LLC*, 595 F.3d 261, 264 (6th Cir. 2010) (citation and internal quotation marks omitted).

ADEA claims based on circumstantial evidence are analyzed under the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[5] *Geiger*, 579 F.3d at

---

[5] In opposing Astec's motion for summary judgment, Richardson argues that McMahan's questioning two or three days prior to her termination regarding her retirement plans constitutes direct evidence of age discrimination. (Doc. 24, at 8–12.) Because the Court finds that

622.  Under the *McDonnell Douglas* framework, the plaintiff must first establish a *prima facie* case for age discrimination by proffering evidence that:  (1) she was a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position held; and (4) she was replaced by someone outside of the protected class.  *Id*. at 622.  Alternatively, the plaintiff can satisfy the fourth prong of the *prima facie* case by providing evidence that similarly situated, non-protected employees were treated differently.  *Moore v. AMPAC*, 645 F. App'x 495, 498 (6th Cir. 2016).  "The burden of proof at the *prima facie* stage is minimal." *Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 283 (6th Cir. 2012) (quoting *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007)); *see also Watson v. Ft. Worth Bank & Tr.*, 487 U.S. 977, 986 (1988) (noting in a disparate treatment case that "[t]he burden of proving a *prima facie* case is not onerous") (internal quotation marks omitted).  If the plaintiff is successful in satisfying the *prima facie* case, the defendant must then offer a legitimate, non-discriminatory reason that motivated the adverse employment action.  *Schoonmaker*, 595 F.3d at 264.  Once the defendant provides a legitimate, nondiscriminatory reason for the adverse employment action, the burden shifts back to the plaintiff to demonstrate that the defendant's proffered reason for the adverse employment action was pretextual.  *Id*.

The parties do not dispute that Richardson is a member of a protected class, that she suffered an adverse employment action, or that she was qualified for the position she held.  (*See* Doc. 20, at 15–17; Doc. 24, at 13–14.)  Accordingly, to meet the minimal burden of establishing her *prima facie* case, Richardson must provide evidence showing that Astec replaced her with someone outside of the protected class or that similarly situated, non-protected employees were

---

Richardson's circumstantial evidence is sufficient to survive summary judgment, it is unnecessary for the Court to make a finding as to whether McMahan's questioning prior to Richardson's termination constitutes direct evidence of age discrimination.

Case 1:18-cv-00020-TRM-SKL   Document 39   Filed 03/18/19   Page 18 of 23   PageID #: 727

treated differently.

In this case, Richardson has provided evidence that Astec treated Oswald, an employee in his thirties who also reported to McMahan, differently than her. According to Brenda Hixson, Oswald engaged in rude and disrespectful behavior, including yelling at employees and making them "feel like dirt." (Doc. 21, at 197.) Specifically, Hixson averred that:

> [O]nce in the summer of 2016, when payroll was late, I mentioned it to [Oswald] since he had become responsible for payroll after [Richardson's] demotion. Jo Henderson, who was the payroll specialist, was absent that day. In front of Maureen Grisham and Ann Daniel, [Oswald] yelled and screamed at me to the point I felt belittled and began to cry. I immediately reported [Oswald's] behavior to [McMahan], but nothing ever happened to my knowledge.

(*Id.*) Astec contends that Oswald is not similarly situated to Richardson because he was not on a "Final Warning" at the time this incident took place, but, as the Sixth Circuit has instructed, "the relevant factors for determining whether employees are similarly situated often include the employees' supervisors, the standards that the employees had to meet, and the employees' conduct." *Johnson v. Kroger Co.*, 319 F.3d 858, 867 (6th Cir. 2003). Astec does not point to any evidence suggesting that Oswald was not expected to comply with Astec's core values or that McMahan subsequently disciplined him for his alleged conduct. As such, evidence that Oswald violated Astec's core values and was not disciplined, even if he was not on a final warning at the time the conduct occurred, is sufficient for Richardson to meet her minimal burden of showing that a similarly situated, non-protected employee was treated differently and establishing her *prima facie* case.

Having satisfied the *prima facie* requirements, the burden shifts to Astec to articulate a legitimate, non-discriminatory reason for firing Richardson. Here, Astec asserts that it fired Richardson for repeatedly violating Astec's core values. (Doc. 20, at 18.) Richardson does not dispute that Astec has satisfied its burden to provide a legitimate, non-discriminatory reason for

Richardson's termination.  (*See* Doc. 24, at 13–14.)

Because Astec has articulated a legitimate, non-discriminatory reason for firing Richardson, the burden shifts back to her to demonstrate that Astec's proffered reason was pretext for age discrimination.  An employee can demonstrate pretext by providing evidence that the employer's reason for terminating her:  (1) had no basis in fact; (2) did not actually motivate the discharge; or (3) was insufficient to motivate the discharge.  *Segel v. Kimberly-Clark Corp.*, 473 F. App'x 416, 420 (6th Cir. 2012) (citing *Manzer v. Diamond Shamrock*, 29 F.3d 1078, 1084 (6th Cir. 1994)).

In this case, Richardson has demonstrated that genuine issues of material fact remain as to whether Astec's proffered reason for terminating her was actually pretext for age discrimination.  First, Richardson disputes the circumstances that precipitated Oswald's complaint to McMahan on January 16, 2017.  Oswald's written complaint states that Richardson, among other things:  (1) accused him of not updating payroll rates and commenting to other accounting department employees that "I guess 30 year olds don't make mistakes"; (2) commenting that "I can't believe a 30 year old will [sic] admit they made a mistake" after discussing a pay rate change with him; and (3) speaking to Daugherty in a demeaning manner and making her cry.  (Doc. 21, at 104.)  Richardson, however, has submitted an affidavit claiming that she never spoke to Oswald in a disrespectful tone, and that, while she did make the comment that "I guess 30-year-olds don't make mistakes," that comment was "made in a normal tone of voice outside of anyone's hearing."  (*Id*. at 190.)  Additionally, Richardson has submitted a declaration from Debbie Daugherty in which she avers that Richardson never made her cry and that she refused to report Richardson to human resources despite Oswald's urging.  (*Id*. at 192–93.)  Finally, Richardson has submitted declarations from Daniel, Daugherty, and Hixson, each

averring that Richardson acted professionally toward others at work and that they never observed her being mean or disrespectful to anyone at work. (*Id*. at 192, 195, 197.) Such evidence, combined with Richardson's testimony that McMahan and Oswald made repeated inquiries about when she planned to retire (*id*. at 40–41; Doc. 25-1, at 2–3, 6), and evidence that Oswald also violated Astec's core values but was not disciplined (Doc. 21, at 197), creates a genuine issue of material fact as to whether Astec's proffered reason for terminating Richardson had a basis in fact or actually motivated Astec's decision to fire her. Accordingly, Richardson has provided sufficient evidence from which a reasonable jury could conclude that Astec's stated reason for firing Richardson was actually pretext for age discrimination.

Finally, Astec argues that, even if the complaints it relied on in deciding to terminate Richardson were factually incorrect, it is entitled to summary judgment under the honest-belief rule. The "honest-belief rule" provides that, "as long as an employer has an honest belief in its proffered nondiscriminatory reason for discharging an employee, the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect." *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001). "An employer has an honest belief in its reason for discharging an employee where the employer reasonably relied on the particularized facts that were before it at the time the decision was made." *Id.* (internal quotations omitted). The key inquiry is "whether the employer made a reasonably informed and considered decision before taking an adverse employment action." *Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580, 591 (6th Cir. 2014).

In this case, genuine issues of material fact remain as to whether Astec made a reasonably informed and considered decision before firing Richardson. According to Richardson, she was not given any details about the complaint underlying Astec's decision to terminate her and, when

she asked McMahan about who lodged the complaint, McMahan refused to answer and told her she could either retire or Astec would terminate her. (Doc. 25-1, at 12.) More importantly, however, McMahan admits that she did not give Richardson an opportunity to tell her side of the story regarding Oswald's complaint, which deviated from her training regarding how to handle employee grievances. (*Id*. at 59–60, 64.) This evidence, combined with Richardson's favorable annual performance reviews from 2011 through 2016 characterizing her as an "excellent" employee (Doc. 21, at 199–214; Doc. 25-1, at 30), demonstrates that genuine issues of material fact remain as to whether Astec's termination decision in the wake of Oswald's complaint about Richardson was reasonably informed and considered.

Finding that Richardson has met her burden of establishing a *prima facie* case and that genuine issues of material fact remain as to whether Astec's stated reason for her termination was actually pretext for age discrimination, the Court will **DENY** Astec's motion for summary judgment (Doc. 19) on Richardson's claim for violation of the ADEA.

## IV.    CONCLUSION

For the reasons stated herein, Astec's motion for summary judgment (Doc. 19) is **DENIED**, and Richardson's motion for partial summary judgment (Doc. 22) is **DENIED**.[6]

---

[6] Richardson also filed a motion to exclude certain documents from the Court's consideration in ruling on Astec's motion for summary judgment—namely, the personnel files, annual evaluations, and W-2s for Debbie Daugherty, Ann Daniel, and Maureen Grisham. (Doc. 35.) Citing that these documents were not produced in discovery, Richardson asserts that Astec should not be allowed to rely on them in support of their motion for summary judgment. Because the Court finds that consideration of these documents does not change its analysis in ruling on the parties' cross-motions for summary judgment, Richardson's motion to exclude (Doc. 35) is **DENIED AS MOOT.**

**SO ORDERED.**

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**